LUELLA ELLIS,

        Plaintiff,

        v.                                            Case No. 20-C-788

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

        Defendant.

## DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Luella Ellis filed this action for judicial review of a decision by the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits under Title II of the Social Security Act. Ellis asserts that the decision of the administrative law judge (ALJ) is flawed and requires remand. For the reasons that follow, the Commissioner's decision is affirmed.

## BACKGROUND

Ellis filed her application for disability and disability insurance benefits on July 7, 2016, alleging onset of disability on September 30, 2015. R. 174. She later amended her alleged onset date to April 1, 2016. R. 194. Ellis identified arthritis in her knees and back, gout, high blood pressure, and anxiety disorder as the conditions limiting her ability to work. R. 198. After her application was denied initially and upon reconsideration, Ellis requested a hearing before an ALJ. On March 19, 2019, ALJ William Shenkenberg held a hearing at which Ellis, who was represented by counsel, Ellis' husband Otto Ellis, and a vocational expert (VE) testified. R. 29–68.

At the time of the hearing, Ellis was 62 years old and lived in a townhouse in Milwaukee, Wisconsin, with her husband, 42-year-old autistic son, and 93-year-old father-in-law. R. 34–35. She completed her GED in 1988 and had taken some courses in accounting and basic office procedures. R. 35. She worked for a state-funded program called the Social Development Commission as a Lead Processing Specialist. R. 40. She managed five to twenty people and performed office administration duties. R. 40–41. In September 2015, the program lost its funding, and she lost her job. R. 41. Ellis reported that she was offered another job as a laborer, but she and the hiring official jointly decided that she "wasn't a good fit for it" because it involved lifting. R. 43. She stated that she has applied for other positions but has not been called back for any interviews. *Id.*

Ellis testified that she had two incidents that resulted in back injuries. R. 36. The first incident was a car accident that occurred in 1995. The second incident occurred in 1999 when she was riding a bus. The bus hit a bump and caused what she thought felt like a sprain in her back. *Id.* She testified that she was on steroids and could not work for two months. *Id.* As time went on, her back pain progressed. R. 37. Although her back pain occasionally bothered her when she was working, she primarily managed it with pain medications. *Id.* She testified that she lays down two or three times a day and sits in a chair for a half hour to 45 minutes at a time. R. 38. Ellis stated that she gets numbness in her left leg, but her right knee gives her the most difficulty. R. 39. She indicated that she no longer climbs ladders or stairs unless she has to and that she has been sleeping on a sofa bed in the living room for the past five years rather than going upstairs to her bedroom. *Id.*

Ellis testified that she did not believe she would be able to do her past job because of her physical limitations and she has problems concentrating. R. 45–46. She described herself as

preoccupied by her pain, where she has bouts of self-pity and crying, and sometimes forgets whether she has taken her medication. R. 47. She reported that she stopped driving about 10 years prior to the hearing because of fear of a low blood sugar episode. R. 48. She stated that she only seldom goes shopping and has stopped going to church or out to bars because of pain from sitting. R. 48–49. Ellis testified that the pain from her arthritis is worse than the pain from her gout, and she is not sure what causes her leg cramps. R. 51–52. Her husband, Otto Ellis, then confirmed that, in the past couple of years, his wife had become forgetful due to her constant pain. R. 59. He described Ellis having crying spells, followed by periods of anger and depression, at least twice a week or more. *Id*. He stated that she used to be very sharp but now cannot do the things she normally would be able to do because "something is giving out constantly." R. 59, 61.

In a twelve-page decision dated June 28, 2019, the ALJ concluded that Ellis was not under a disability within the meaning of the Social Security Act from April 1, 2016, through the date of the decision. R. 10–21. Following the Social Security Administration's (SSA) five-step sequential evaluation process, the ALJ found at step one that Ellis met the insured status requirements of the Social Security Act through December 31, 2020, and that she had not engaged in substantial gainful activity since April 1, 2016, the alleged onset date. R. 12. The ALJ found that Ellis had the following severe impairments: degenerative joint disease of the bilateral knees, degenerative joint disease of the back, and obesity. *Id.* The ALJ then determined that Ellis did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 15.

Next, the ALJ assessed Ellis' residual functional capacity (RFC) and found that she had the residual functional capacity to perform sedentary work "except she is limited to frequent balancing and occasional stooping, kneeling, crouching, and crawling; she is limited to occasional

3

climbing of ramps, stairs, ladders, ropes, and scaffolds; and she must avoid concentrated exposure to hazards such as moving machinery and unprotected heights." *Id*. The ALJ determined that Ellis was capable of performing her past relevant work as a claims processing specialist and that the work did not require the performance of work-related activities precluded by her RFC. R. 20. The ALJ concluded that Ellis was not disabled under the Social Security Act from April 1, 2016, through the date of the decision. R. 21. The Appeals Council denied her request for review, making the ALJ's decision the final decision of the Commissioner of Social Security in her case. R. 1.

## LEGAL STANDARD

The burden of proof in social security disability cases is on the claimant. 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled."). While a limited burden of demonstrating that other jobs exist in significant numbers in the national economy that the claimant can perform shifts to the SSA at the fifth step in the sequential process, the overall burden remains with the claimant. 20 C.F.R. § 404.1512(f). This only makes sense, given the fact that the vast majority of people under retirement age are capable of performing the essential functions required for some subset of the myriad of jobs that exist in the national economy. It also makes sense because, for many physical and mental impairments, objective evidence cannot distinguish those that render a person incapable of full-time work from those that make such employment merely more difficult. Finally, placing the burden of proof on the claimant makes sense because many people may be inclined to seek the benefits that come with a finding of disability when better paying and somewhat attractive employment is not readily available.

The determination of whether a claimant has met this burden is entrusted to the Commissioner of Social Security. Judicial review of the decisions of the Commissioner, like

judicial review of all administrative agencies, is intended to be deferential. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). The Social Security Act specifies that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). But the "substantial evidence" test is not intended to reverse the burden of proof. In other words, a finding that the claimant is not disabled can also follow from a lack of convincing evidence.

Nor does the test require that the Commissioner cite conclusive evidence excluding any possibility that the claimant is unable to work. Such evidence, in the vast majority of cases that go to hearing, is seldom, if ever, available. Instead, the substantial evidence test is intended to ensure that the Commissioner's decision has a reasonable evidentiary basis. *Sanders v. Colvin*, 600 F. App'x 469, 470 (7th Cir. 2015) ("The substantial-evidence standard, however, asks whether the administrative decision is rationally supported, not whether it is correct (in the sense that federal judges would have reached the same conclusions on the same record).").

The Supreme Court recently reaffirmed that, "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The phrase 'substantial evidence,'" the Court explained, "is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Id.* "And whatever the meaning of 'substantial' in other contexts," the Court noted, "the threshold for such evidentiary sufficiency is not high." *Id.* Substantial evidence is "'more than a mere scintilla.'" *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229). It means—and means only—"'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

5

The ALJ must provide a "logical bridge" between the evidence and his or her conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). "Although an ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (citing *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)). But it is not the job of a reviewing court to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Given this standard, and because a reviewing court may not substitute its judgment for that of the ALJ, "challenges to the sufficiency of the evidence rarely succeed." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

Additionally, the ALJ is expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## ANALYSIS

### A. Evaluation of Opinion Evidence

Ellis asserts that the ALJ erred in evaluating the opinions of her primary care provider, Dr. Mohammad Kahn. Generally, the ALJ must give "controlling weight" to the medical opinions of a treating physician on the nature and severity of an impairment if it is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with other substantial evidence." *Burmester*, 920 F.3d at 512; 20 C.F.R. § 416.927(c); SSR 96-2p. If

6

the ALJ decides to give lesser weight to a treating physician's opinion, he must articulate "good reasons" for doing so. *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010). Stated differently, although an ALJ is not required to give the treating physician's opinion controlling weight, he is still required to provide a "sound explanation for his decision to reject it." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). "If the ALJ does not give the treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

Dr. Khan completed a "Physical Medical Opinion" form on March 8, 2019. R. 613–17. He noted that Ellis was diagnosed with degenerative joint disease in the knees and back and that her symptoms included back pain and pain in both knees. R. 613. He opined that Ellis could walk one city block without rest or severe pain, could sit for two hours at one time, and could stand for 15 minutes at one time. R. 614. He stated that Ellis could sit for about four hours total in an eight-hour workday and stand and walk for less than two hours total in an eight-hour workday. He indicated that Ellis would need a job that permits shifting positions at will from sitting, standing, or walking and that she would need to walk every 45 minutes in an eight-hour workday. *Id.* Dr. Khan opined that Ellis would need to take 15-minute breaks every hour due to her pain. *Id.* He indicated that Ellis could frequently lift ten pounds, occasionally lift 20 pounds, and never lift 50 pounds and that she could rarely twist, stoop, crouch/squat, and climb stairs and never climb ladders. R. 615. He opined that Ellis would be off task for 25 percent or more of the day and that she is incapable of even low stress work. R. 616. He indicated that she would be absent from work more than four days per month as a result of her impairments. *Id.*

7

Case 2:20-cv-00788-WCG   Filed 09/15/21   Page 7 of 14   Document 24

The ALJ gave little weight to Dr. Khan's opinion about work capacity. He explained that, although Dr. Khan was Ellis' primary care provider who treated her on numerous occasions, Dr. Khan's opinion is not supported by medical imaging, examination findings, or the record as a whole. He reasoned:

> Dr. Khan set out extremely limiting assessments indicating that the claimant could not even stand or walk for two hours in the workday, she could not sit for more than four hours in the workday, she could only stand for 15 minutes at one time, and she needed to shift positions at will. Dr. Khan's assessments for standing, walking and sitting are not entirely supported by the medical imaging that showed only minor degenerative changes of the left knee and stable findings for the right knee without severe degenerative joint disease (Exhibit 7F/35). Nor are these assessments supported by the medical evidence showing that the claimant had some abnormalities (such as crepitation in the knees, reduced range of motion, and tight and rigid muscles) but she also displayed a normal gait and station, normal strength (or only slightly reduced strength), normal reflexes, and normal sensation (Exhibits 2F, 4F, 10F). Moreover, the record does not support Dr. Khan's assessments about unscheduled breaks, off task behavior, and absences from work. The medical evidence revealed that the claimant reported knee and back pain but she nevertheless exhibited some good function such as full orientation, alertness, intact memory, and intact attention and concentration (Exhibits 4F, 6F). The medical evidence also showed that the claimant had improved function with physical therapy and her knee and back pain were described as stable with medications (Exhibits 2F, 10F). This evidence does not support Dr. Khan's assessments about unscheduled breaks, off task behavior, and absences from work.

R. 19.

Ellis maintains that the ALJ's conclusion that Dr. Khan's opinion is inconsistent with the medical evidence is flawed. But her disagreement with the ALJ's findings is not a basis for remand. The Court concludes that the ALJ thoroughly reviewed the record and explained how Dr. Khan's opinion was inconsistent with the medical record as a whole, including the psychological evaluation, Ellis' examination records, and the state agency psychologists' evaluations. The ALJ provided an "accurate and logical bridge" between the evidence and his conclusions. *Roddy*, 705 F.3d at 636. Therefore, the ALJ did not err by assigning Dr. Khan's opinion little weight.

## B. Assessment of Symptoms

Ellis asserts that the ALJ's assessment of her symptoms rests on an erroneous evaluation of the record. The Social Security regulations set forth a two-step procedure for evaluating a claimant's statements about the symptoms allegedly caused by her impairments. *See* 20 C.F.R. § 404.1529. First, the ALJ determines whether a medically determinable impairment "could reasonably be expected to produce the pain or other symptoms alleged." § 404.1529(a). If so, the ALJ then "evaluate[s] the intensity and persistence" of a claimant's symptoms and determines how they limit the claimant's "capacity of work." § 404.1529(c)(1). In doing so, the ALJ considers all the available evidence as well as the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of her pain or other symptoms; (3) the precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) other treatment; and (6) any other factors concerning functional limitations and restrictions due to pain or other symptoms. *See* § 404.1529(c)(3); *see also* SSR 16-3p. "ALJ credibility determinations are given deference because ALJs are in a special position to hear, see, and assess witnesses." *Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014) (citation omitted). On judicial review, the court must "merely examine whether the ALJ's determination was reasoned and supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (citing *Jens v. Barnhart*, 347 F.3d 209, 213–14 (7th Cir. 2003)). The court is not to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner." *Lopez*, 336 F.3d at 539. "It is only when the ALJ's determination lacks any explanation or support that we will declare it to be patently wrong . . . and deserving of reversal." *Elder*, 529 F.3d at 413–14 (internal quotation marks and citations omitted); *see also Burmester*, 920 F.3d at 510.

9

As an initial matter, Ellis argues that the ALJ applied the wrong standard in assessing her symptoms. She takes issue with the following statement in the ALJ's decision: "[A]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 16. Ellis asserts that there is no requirement that a claimant's symptoms be "entirely consistent" with the objective and other evidence in the record. Even though the ALJ used this "boilerplate language," the ALJ applied the correct standard in assessing Ellis' symptoms and, as explained below, discussed the substantial evidence that supported his decision. *See Harris v. Saul*, 835 F. App'x 881, 886 (7th Cir. 2020); 20 C.F.R. § 404.1529(c). Ellis also asserts that the ALJ failed to indicate which symptoms he found to not be entirely consistent with the evidence in the record or why they were not entirely consistent with the evidence in the record. An ALJ need only "minimally articulate reasons for crediting or rejecting evidence of disability," however. *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992); *see also Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012).

In addition, Ellis asserts that the ALJ's reliance on objective evidence was not a sufficient basis upon which to find the statements of Ellis and her husband concerning the severity of her symptoms not credible. SSR 16-3p provides: "[i]n considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p. In

10

this case, the ALJ not only considered the objective medical evidence in the record in assessing the intensity, persistence, and limiting effects of Ellis' conditions; he also considered other evidence in the record, including the statements of Ellis and her husband, the symptoms Ellis experienced, and her responses to treatment.

After summarizing the record, the ALJ concluded, "the medical evidence documented the claimant's degenerative joint disease of the bilateral knees, degenerative joint disease of the back, and obesity. The residual functional capacity accommodates these impairments with a range of sedentary work." R. 18. He explained:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are not entirely consistent with the evidence. Although she alleged disability due to knee and back pain, the medical imaging and examination findings revealed adequate function. The medical imaging showed mild abnormalities in the left knee and mild to moderate abnormalities in the right knee. She has exhibited a largely normal gait at times without the use of an assistive device. She also exhibited normal strength (or only slightly reduced strength) and normal sensation. Despite complaints of chronic pain, she displayed full orientation and intact attention. Her conditions were treated with medications and physical therapy, which provided some relief and/or improved function. Even though she was obese, she had normal respiratory effort, normal cardiac findings, controlled diabetes, and stable hypertension. She was advised to use conservative measures, such as lifestyle changes, to treat obesity.

*Id.* The ALJ's decision is consistent with SSR 16-3p.

Ellis argues that the ALJ failed to properly consider the "other evidence" in the record when evaluating her symptoms. In particular, she asserts that the ALJ failed to consider evidence about her daily activities and failed to adequately address the testimony of her husband. The ALJ noted that Ellis' husband provided testimony about her ability to function. He explained that Ellis' husband testified that Ellis had crying spells and difficulty concentrating due to chronic pain, that he performed the majority of the household activities because of Ellis' limitations, and that Ellis had difficulty remembering to take her medications, so he reminded her to do so. R. 20. The ALJ

11

explained that, while he considered these firsthand observations about Ellis' activities or avoidance of activities, he gave no weight to any offered diagnoses. The ALJ also gave little weight to the testimony about what Ellis was feeling because that is subjective to Ellis. The ALJ further gave little weight to any opinions about Ellis' ability to engage in work activity, finding the objective medical evidence more informative about Ellis' ability to function. *Id.*

Ellis asserts that the ALJ failed to adequately address her husband's testimony. Although Ellis argues that the ALJ did not cite to medical evidence to support his conclusion, the ALJ properly considered treating physician notes and other medical evidence in the record. R. 17–19. In this case, the ALJ gave reasons for discounting the third-party statements of Ellis' husband. He considered the statements and properly weighed their evidentiary value along with the other evidence in the record. *See* 20 C.F.R. § 404.1529(c). That is all that is required.

Ellis also asserts that the ALJ did not consider Ellis' daily activities other than noting her husband's statement that he performed the majority of the household activities. Although activities of daily living is one factor the ALJ must consider in evaluating the intensity and persistence of a claimant's symptoms, § 404.1529(c)(3), Ellis does not indicate which aspects of her activities of daily living the ALJ should have considered. Ellis' daily activities did not constitute an "an entire line of evidence that is contrary to the ruling." *Terry*, 580 F.3d at 477. The ALJ's evaluation of Ellis' statements concerning the intensity, persistence, and limiting effects of her symptoms was otherwise supported by the record. *See Vanover v. Colvin*, 627 F. App'x 562, 566–67 (7th Cir. 2015).

The ALJ recognized that Ellis had impairments that impacted her ability to work but not to the degree alleged. He applied the regulations governing the assessment of Ellis' symptoms and provided adequate support for his findings. The ALJ built an accurate and logical bridge in

12

Case 2:20-cv-00788-WCG   Filed 09/15/21   Page 12 of 14   Document 24

assessing Ellis' statements concerning her pain and other symptoms. The ALJ's conclusion is not patently wrong and does not necessitate remand.

**C. Obesity**

Ellis asserts that the ALJ failed to adequately consider her obesity in formulating her RFC. An RFC is an assessment describing the extent to which an individual's impairments may cause physical or mental limitations or restrictions that could affect her ability to work. SSR 96-8p, 1996 WL 374184, at *2. In forming the RFC, an ALJ must review all of the relevant evidence in the record and "consider all limitations that arise from medically determinable impairments." *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014).

In this case, the ALJ stated that, "[d]espite the obesity, the treatment records documented that the claimant had normal respiratory effort, normal cardiac findings, controlled diabetes, and stable hypertension." R. 18. He explained that Ellis was advised during primary care appointments to make dietary changes and increase physical activity to address obesity and that she was informed that weight loss would benefit her arthritis, diabetes mellitus, and hypertension. *Id.* The ALJ also relied on the opinions of the state agency physicians. Dr. William Fowler opined that Ellis could perform light work except with occasional stooping and kneeling. Dr. Hemantha Surath opined that Ellis could perform light work except with standing and/or walking for a total of four hours; the avoidance of uneven surfaces; frequent climbing of ladders, ropes, and scaffolds; occasional stooping, kneeling, crouching, and crawling; and the avoidance of concentrated exposure to hazards. The ALJ gave partial weight to their opinions. R. 19. He noted that, although Dr. Surath offered an assessment of frequent climbing of ramps or stairs, he reduced Ellis' RFC to occasional climbing of ramps and stairs to accommodate her reports of pain and clinical obesity. R. 20. The RFC also reduced Ellis to sedentary work. The ALJ reasoned that this finding is supported by

13

evidence about Ellis' combination of chronic back pain, chronic knee pain, and obesity. *Id.* He explained that the medical evidence confirmed that Ellis had abnormalities that would likely reduce her abilities to lift, carry, walk, and stand to the sedentary level, such as a BMI around 40. *Id.*

Ellis argues that her case is about arthritis and obesity rather than "respiratory impairments, cardiac, diabetes and hypertension" and that the ALJ should have "explained why he apparently concluded contrary to SSR 19-2p that Ms. Ellis did not have more pain and functional limitations than she would have from arthritis alone." Dkt. No. 15 at 19. Ellis points to no evidence that her weight affects her ability to work such that the ALJ should have included further limitations in the RFC. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). Although Ellis asserts that Dr. Khan described that she had a reduced ability to sit, stand, and walk, the ALJ properly rejected Dr. Khan's opinion as discussed above. The ALJ sufficiently considered Ellis' obesity in combination with her other impairments.

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED** at Green Bay, Wisconsin this 15th day of September, 2021.

s/ William C. Griesbach
William C. Griesbach
United States District Judge